**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRUSTEES OF THE B.A.C. LOCAL 4 PENSION FUND, et al., *Plaintiffs*, v. BLADE GENERAL CONTRACTING, INC., *Defendant*. | Civil Action No. 25-16111 **OPINION** July 28, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by Plaintiffs Trustees of the B.A.C. Local 4 Pension Fund, Trustees of the B.A.C. Local 5 Pension Fund, Trustees of the New Jersey B.A.C. Annuity Fund, Trustees of the New Jersey B.A.C. Health Fund, Trustees of the New Jersey BM&P Apprentice and Education Fund, and Trustees of the Bricklayers & Trowel Trades International Pension Fund (collectively, the "Funds" or "Plaintiffs") against Defendant Blade General Contracting, Inc., ("Blade" or "Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). (ECF 6, "Motion" or "Mot.") The Court has decided this Motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion is **GRANTED.**

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This action arises out of Defendant's alleged failure to pay delinquent employer benefit contributions to employee benefit funds in violation of Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185. (*See* ECF 1, "Complaint" or "Compl.") Plaintiffs Trustees of the B.A.C. Local 4 Pension Fund, Trustees of the B.A.C. Local 5 Pension Fund, Trustees of the New Jersey B.A.C. Annuity Fund, Trustees of the New Jersey B.A.C. Health Fund, Trustees of the New Jersey BM&P Apprentice and Education Fund, and Trustees of the Bricklayers & Trowel Trades International Pension Fund are a group of employer and employee trustees of labor-management trust funds. (*See id.* ¶¶ 4-9.) Defendant Blade Contracting, Inc., is a corporation organized and established under the laws of New Jersey and conducts business in New Jersey and New York. (*Id.* ¶ 10.)

Plaintiffs allege that, at all relevant times, Defendant was bound to a collective bargaining agreement ("the CBA") with the B.A.C. Administrative District Council of New Jersey (the "Union"). (*Id.* ¶ 11.) The CBA established the terms and conditions for Defendant's employees who performed "Covered Work," meaning they worked as "bricklayers, cement masons, plasterers, pointer caulkers, cleaners, fire proofers, stone masons, brick pavers, and exterior marble masons within a specified geographical area." (*Id.*; ECF 7-1, "CBA"; ECF 7-2.) Under the CBA, Defendant is required to remit contributions to the Funds for each hour of Covered Work done by

---

[1] The facts and procedural history are drawn from the briefings (ECF Nos. 1, 4-9) and documents integral to or relied upon by the briefings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

its employees. (Compl. ¶ 12; CBA at Art. XI § 1.) The CBA also requires Defendant to "withhold dues check-offs from its employees' pay and forward such amounts to the Union" and make its books and payroll records available to the Funds for an audit verifying its compliance with the CBA's contribution obligations. (Compl. ¶¶ 13-14; CBA at Art. X, C-D; *id.* at Art XI § 6.)

Through the CBA, Defendant is also bound by the Statement of Policy for Collection of Employer Contributions ("Collection Policy"). (Compl. ¶ 15; CBA at Art. XI § 2; ECF 7, "Canning Decl." ¶ 8.) The Collection Policy stipulates that an employer delinquent in submitting contributions as identified by an audit or otherwise is liable for all delinquent contributions plus interest at a rate of "10% *per annum* to the Local Funds, interest thereon at a rate of 15% *per annum* to the IPF, liquidated damages of 20% of the principal amount of the delinquency, and all reasonable attorneys' fees, expenses, and costs incurred by the Funds in collecting the total delinquency." (Compl. ¶ 15; ECF 7-3 "Collection Policy" or "CP," Art. II § 6.)

Plaintiffs make a series of allegations about Defendant's failure to make the required contributions under the CBA. Specifically, they allege that Defendant failed to make the required contributions to the Funds for Covered Work performed by Defendant's employees from October 1, 2022 to December 31, 2023 (the "Audit Period") and from May 12, 2025 to September 6, 2025 (the "Non-Audit Period"). (Compl. ¶¶ 16, 20-21.) Excluding interest, Plaintiffs assert that Defendant is liable for $16,092.39 and $77,611.12 in delinquent contributions during the Audit Period and the Non-Audit Period, respectively. (*Id.* ¶¶ 17, 27; Canning Decl. ¶ 11.) Plaintiffs also allege that Defendant failed to remit and is liable for $328.38 and $10,127.12 of dues check-offs for the Audit and Non-Audit periods respectively, excluding interest. (Compl. ¶¶ 21, 27; Canning

Decl. ¶ 11.) Finally, Plaintiffs allege that Defendant is also liable for attorneys' fees and costs. (Compl. ¶¶ 29, 39.)[2]

Plaintiffs filed their Complaint on September 30, 2025. (*See generally id.*) On January 8, 2026, Plaintiffs petitioned the Clerk of the Court to issue an entry of default against Defendant. (ECF 5.) On January 9, 2026, the Clerk of the Court entered default against Defendant. (*Id.*) Plaintiffs filed the present Motion on February 9, 2026. (Mot.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the defendant and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken

[2] While Plaintiffs assert that Defendant is liable for $77,611.12 in delinquent contributions and $10,127.12 in dues check-offs for the Non-Audit Period in their Complaint, (*id.* ¶ 27), they only request $31,872.32 in unpaid benefits contributions and $4,078.8 in dues check-offs at default judgment. (Canning Decl. ¶¶ 13-18.)

as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc.*, 558 F. Supp. 2d at 535. After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

## III. ANALYSIS

### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal citation omitted). For the reasons explained below, this Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendant.

A district court has original jurisdiction over an action when there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 or when there is federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised issues under ERISA and LMRA. (Compl. ¶ 1; Mot. at 1.)

The Court also retains personal jurisdiction over Defendant. "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original)

(internal quotation omitted). Defendant is incorporated in and conducts business throughout the State of New Jersey. (*See* Compl. ¶ 10; ECF 8-2.) This Court has personal jurisdiction over Defendant.

**B. Service of Process**

Second, a court must determine whether there is sufficient proof of service prior to entering default judgment. *Tr. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-5739, 2021 WL 3674353, at *3 (D.N.J. Aug. 19, 2021).

As a corporation, Defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Here, Plaintiffs provide the Court with an Affidavit of Service dated December 22, 2025. (*See* ECF 4.) The Affidavit of Service indicates that personal service was made upon Defendant's authorized agent. (*Id.*) Thus, service was proper, and the Court is satisfied that it has jurisdiction to enter default judgment. *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

**C. Entry of Default**

Third, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Here, Plaintiffs requested that the Clerk issue an entry of default on January 8, 2026, attesting that Defendant failed to timely respond to

the Complaint. (ECF 5.) As such, the Clerk appropriately issued an entry of default on January 9, 2026. (*See id.*)

**D. Fitness**

Fourth, "the Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment." *Barrett v. Tri-Coast Pharm., Inc.*, 518 F. Supp. 3d 810, 822 (D.N.J. 2021) (citing Fed. R. Civ. P. 55(b)(2)). Neither of these requirements apply to Defendant as it is a corporate entity. *See, e.g.*, *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2016 WL 5660426, at *3 (D.N.J. Sept. 29, 2016).

**E. Sufficiency of Plaintiffs' Cause of Action**

Fifth, the Court must determine whether the Complaint states a proper cause of action. In performing this inquiry, the Court accepts as true a plaintiff's well pleaded factual allegations while disregarding mere legal conclusions. *See DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006). The Court finds that the Complaint states a valid cause of action for breach of contract under Section 515 of ERISA and Section 301 of the LMRA.

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. Upon finding that an employer violated Section 515, Section 502(g) "allows those participants, beneficiaries, or fiduciaries to recover unpaid contributions, interest, liquidated damages, reasonable attorney's fees and costs, and such other relief as the Court deems

appropriate." *Id.* § 1132(g)(2); *Trs. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund, et al. v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 443 (D.N.J. 2024).

Plaintiffs assert that Defendant violated Section 515 of ERISA by failing to (1) make contributions as required by the CBA and (2) remit dues check offs. (Compl. ¶¶ 27, 37, 40.) Courts in this District have frequently found that, at the default judgment stage, allegations that an employer is bound to a CBA, obligated to make contributions to a benefit fund and remit dues check offs under the CBA, and failed to make those contributions, are sufficient to state a cause of action under Section 515. *See Leo Constructing, LLC*, 718 F. Supp. 3d at 443 (holding that plaintiffs pled a viable Section 515 claim when they alleged that the defendant "agreed to abide by the CBA," "contribute fringe benefits to the Funds and pay the Union dues check-offs," and "failed to make the contractually required fringe contributions"); *see also Trs. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund, et al. v. Eagle Indus. Painting, LLC*, No. 21-14130, 2022 WL 5169532, at *3 (D.N.J. Oct. 4, 2022) (holding that a complaint stated a valid cause of action under Section 515 where the plaintiffs pled that the defendant entered into a CBA with a union, failed to make the required contributions, and failed to pay dues check-offs during the same period).

Here, Plaintiffs sufficiently allege that Defendant agreed to (1) abide by the CBA, (Compl. ¶¶ 1, 35, 46), (2) contribute fringe benefits to the Funds, (*id.* ¶¶ 12, 36), and (3) pay the Union dues check-offs. (*Id.* ¶¶ 13.) Plaintiffs also allege that Defendant failed to make the contractually required fringe contributions for Covered Work to the Funds from October 1, 2022 to December 31, 2023 and May 12, 2025 to September 6, 2025, (*id.* ¶¶ 16-27), and failed to pay the Union dues check-offs from May 12, 2025 to September 6, 2025. (*Id.* ¶¶ 21-26.) Plaintiffs have thus pled a

viable claim under Section 515 of ERISA.[3] *See Leo Constructing, LLC*, 718 F. Supp. 3d at 443; *Eagle Indus. Painting, LLC*, 2022 WL 5169532, at *3.

**F. Whether Default Judgment Would Be Proper**

The Court must next consider (1) whether the party subject to the default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Doug Brady, Inc.*, 250 F.R.D. at 177. The Court concludes that all three factors weigh in favor of default judgment.

First, Defendant lacks a meritorious defense. *See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("assum[ing] that the Defendants have no litigable defenses available" because they "have not filed anything with the Court," "have offered no defense," and "the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense"); *see also Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond). Defendant was properly served and has failed to defend or otherwise respond to the Complaint. *See supra* at Part III.B.

Second, the Court finds that Plaintiffs will suffer prejudice absent entry of default judgment, as they lack other means of obtaining relief. *See N.J. Bldg. Laborers' Statewide Pension*

---

[3] This Court need not analyze Plaintiffs' LMRA claim since Plaintiffs have sufficiently pled their ERISA claim. *See Trs. of B.A.C. Local 4 Pension Fund, et al. v. MMS Masonry Grp. LLC*, No. 25-12040, 2026 WL 1296062, at *3, n.3 (D.N.J. May 12, 2026) ("Because Plaintiffs have sufficiently pleaded ERISA claims, the Court need not analyze Plaintiffs' LMRA claims."); *see also Trs. of B.A.C. Loc. 4 Pension Fund v. M&N Constr. Servs., Inc.*, No. 24-425, 2024 WL 5165329, at *3 (D.N.J. Dec. 19, 2024) (foregoing LMRA analysis in default judgment consideration when ERISA action is sufficiently pleaded); *Int'l Union of Painters v. Mazzco Enters., Inc.*, No. 13-3505, 2015 WL 7760172, at *3–5 (D.N.J. Dec. 1, 2015) (same). Plaintiffs have sufficiently pled both their ERISA and LMRA claims.

*Fund v. River Driver Co., LLC*, No. 17-9047, 2018 WL 4380994, at *4 (D.N.J. Sept. 2018) (finding a plaintiff would suffer prejudice without default judgment because it had no other way to obtain relief). Further, "because delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries, Plaintiffs would be prejudiced if default judgment was not entered in their favor." *Leo Constructing, LLC*, 718 F. Supp. 3d at 444 (internal citation and quotations omitted).

Finally, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4. In this case, there is nothing before the Court to suggest that Defendant's failure to respond was not willfully negligent. *See id.* (citing *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). Accordingly, an entry of default judgment against Defendant would be proper.

**G. Damages**

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must nonetheless prove damages. *Corbin*, 908 F.2d at 1149. Once a defendant's liability under Section 515 is established, Section 502(g)(2) of ERISA "allows Plaintiffs to recover: (1) the full amount of unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of the interest on the unpaid contributions or liquidated damages; and (4) reasonable attorneys' fees and costs." *See Leo Constructing*, 718 F. Supp. 3d at 444; 29 U.S.C. § 1132(g)(2).

i. Audit Period

Plaintiffs seek a total of $16,420.77 in unpaid benefits contributions and dues checkoffs for the period October 1, 2022 to December 31, 2023. (Canning Decl. ¶ 11.) This number comprises $16,092.39 in delinquent benefit contributions and $328.38 in delinquent dues checkoffs. (*See id.*) Plaintiffs support these totals with a copy of the Audit report. (ECF 7-4, "AR".) Plaintiffs also assert that, as of February 2, 2026, Defendant owes interest on the unpaid benefit contributions in the amount of $3,604.53. (Canning Decl. ¶ 20.) Plaintiffs support this total with a spreadsheet calculating the interest per contribution period in accordance with the Collection Policy and at the specific rates for each Fund. (*See* ECF 7-7.)

Plaintiffs also seek a total of $3,218.47 in liquidated damages for the Audit Period, calculated at twenty (20) percent of late-paid and unpaid contributions ($16,092.39) in accordance with the Collection Policy. (Canning Decl. ¶ 24; CP at Art. II § 6.) "Because the claimed liquidated damages is greater than the interest, ERISA allows an award of liquidated damages on top of the interest." *Leo Constructing*, 718 F. Supp. 3d at 445; *see* 29 U.S.C. § 1132(g)(2)(C).

The Court concludes that Plaintiffs are entitled to $23,243.77 in damages for the Audit Period, plus additional interest on the unpaid benefits contributions to be calculated at the rate of $4.66 per diem through the date of payment. (*See* ECF 7-7.)

ii. Non-Audit Period

In their present Motion, Plaintiffs seek a total of $31,872.32 in unpaid benefits contributions and $4,078.80 in required dues check-offs in connection with Covered Work performed by Defendant's employees on the Emerson Projects. (Canning Decl. ¶¶ 13-18.) Plaintiffs support these totals with spreadsheets depicting the outstanding contributions and dues checkoffs owed under the projects. (ECF 7-5; ECF 7-6.) Plaintiffs also assert that, as of February

2, 2026, Defendant owes interest on the unpaid benefit contributions in the amount of $1,419.94. (Canning Decl. ¶ 21.) Plaintiffs support this total with a spreadsheet calculating the interest per contribution period in accordance with the Collection Policy and the specific rates for each Fund. (ECF 7-8.)

Plaintiffs also seek $15,522.22 in liquidated damages in connection with the Non-Audit Period, calculated in accordance with the Collection Policy. (Canning Decl. ¶ 24; *see* CP at Art. II § 6.) The Court will award liquidated damages on top of interest for the Non-Audit Period since the claimed liquidated damages are greater than the unpaid benefits interest. *See Leo Constructing*, 718 F. Supp. 3d at 445; 29 U.S.C. § 1132(g)(2)(C).

The Court concludes that Plaintiffs are entitled to $52,893.28 in damages for the Non-Audit Period, plus additional interest on the unpaid benefits contributions to be calculated at the rate of $9.17 per diem through the date of payment. (*See* ECF 7-8.)

iii. <u>Attorneys' Fees and Costs</u>

Section 502(g)(2) of ERISA "requires courts to award reasonable attorneys' fees and costs in a civil enforcement action against an employer for unpaid contributions." *See Leo Constructing*, 718 F. Supp. 3d at 445; 29 U.S.C. § 1132(g)(2)(D). In determining whether a party's request for attorneys' fees is reasonable, courts perform the "lodestar calculation" and "determine[] the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). "A party seeking attorneys' fees must provide 'fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys.'" *Leo Constructing*, 718 F. Supp. 3d at 445 (quoting *Metro Auto Ctr.*, 501 F.3d at 291).

Plaintiffs assert that, before December 31, 2025, they paid partners $390 per hour, associate attorneys $290 per hour, and legal assistants $130 per hour. (ECF 8, "Herstic Decl.," ¶¶ 11-14; ECF 8-4.) Plaintiffs additionally assert that, after January 1, 2026, they paid partners $420 per hour, associate attorneys $310 per hour, and legal assistants $140 per hour. (*Id.*) Plaintiffs indicate that 22.9 hours were spent on this case, and that, as a result, they are entitled to $5,992.00 in legal fees. (Herstic Decl. ¶ 16; ECF 8-4 at 1-8.) Finally, Plaintiffs also allege they spent $405 on court fees, $542.55 on service fees, and $24.26 on research fees in connection with this matter. (Herstic Decl. ¶ 17; ECF 8-4 at 8-9.) Plaintiffs support all alleged attorneys' fees and costs with an itemized statement detailing the work performed by the attorneys and legal assistants, the hours spent and the hourly rate for each task, and the court, service, and research fees. (*See* ECF 8-4.)

As Plaintiffs note, this Court has frequently found rates of $300 to $500 per hour for partners, $210 to $300 for associates, and $100 to $130 for legal assistants to be reasonable in ERISA actions. *See, e.g.*, *M&N Constr. Servs., Inc.*, 2024 WL 5165329, at *4 (concluding that $290/hour for an associate and $130/hour for a paralegal are reasonable rates); *Chaaban v. Criscito*, No., 2013 WL 1737689 at *11-12 (D.N.J. Apr. 3, 2013) (concluding that $350-$500 for partners, $225-$300 for associates, and $105-$130 for paralegals are reasonable rates); *Killian v. Johnson & Johnson,* No. 07-4902, 2009 WL 537666, at *10 (D.N.J. March 4, 2009) (adopting the magistrate judge's recommendation that $450 per hour for partners, between $210 and $235 per hour for associates, and $100 per hour for paralegals were reasonable rates). The Court concludes that the hours spent and the hourly rates were reasonable given the nature of the case and the services rendered. As such, the Court awards Plaintiffs $6,963.81 in attorneys' fees and costs.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment (ECF 6) is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
Parties